RODINI, APPELLANT, *v.* LYTLE ET AL., RESPONDENTS.

[Submitted January 21, 1896. Decided January 27, 1896.]

SURETIES—*Official bond—Judgment against officers.*—A judgment against a constable for official misconduct, recovered in an action to which his sureties were not parties, has no effect as evidence in a subsequent action against the sureties on the officer's official bond, conditioned for the faithful performance of the duties of his office, but the facts of the malfeasance of their principal must be proved independently thereof.

SAME—*Parties defendant.*—In this state, a principal and sureties may be sued together. (*Wibaux* v. *Grinnell Live Stock Co.* 9 Mont. 154; *Hoskins* v. *White*, 13 Mont. 72; *Woodman* v. *Calkins*, 13 Mont. 365; *Nelson* v. *Donovan*, 16 Mont. 85, cited.)

*Appeal from Second Judicial District, Silver Bow County.*

ACTION on an official bond. Judgment was rendered for the defendants by McHATTON, J., on demurrer to the complaint. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff recovered a judgment against the defendant Lytle for damages by reason of an unlawful seizure by Lytle,

as constable, of personal property belonging to plaintiff. The seizure by the constable was made in an action in which persons other than this plaintiff were defendants. The judgment was affirmed in 13 Mont. 123. Upon the remittitur filed in the district court, the plaintiff, Rodini, commenced the action now before us against Lytle, the constable, and the sureties on his official bond, J. D. Thomas and H. G. Valiton. The plaintiff set up the facts above mentioned, and pleaded in full the official bond of the constable. The bond was to the effect that if said Lytle shall faithfully perform all the duties of his said office as constable, according to law, and the requirements of any law that may hereafter be enacted, that the obligation shall be null; otherwise, to remain in full force and effect.

The sureties filed demurrers to the complaint. The demurrers were upon several grounds,—among them, that the complaint did not set up facts sufficient to constitute a cause of action. The complaint set forth the rendering of the former judgment in favor of this plaintiff and against the defendant Lytle. That judgment having been so rendered, plaintiff claimed that, upon pleading that fact, as he did, and the giving of the official bond by the sureties, the said judgment theretofore given against said Lytle created a liability against the sureties. The sureties were not joined in the original suit, and were not in any way made parties thereto.

The point raised by the defendants' demurrers was that they, not being parties to the original suit, were not bound by the judgment therein, nor liable, by reason of their bond, to pay said judgment. The demurrers were sustained. Plaintiff electing to stand upon his complaint, judgment was rendered against him, from which he now appeals.

*Chas. O'Donnell,* for Appellant.

*John T. Baldwin,* for Respondents.

DE WITT, J.—The question raised upon this appeal is, what is the effect, upon the sureties on the official bond, of a judg-

ment rendered against their principal ?    There is a direct con-
flict in the authorities upon this question.    (2 Black on Judg-
ments, § 588; Mechem on Public Officers, § 290; Brandt on
Suretyship and Guaranty § 637, and cases collected and re-
viewed in these text books.)    It is held by many courts that,
when a bond is given to the effect that a principal will do a cer-
tain act,—as, for instance, pay a certain sum of money, or sat-
isfy a judgment,—then the sureties are bound that he shall do
such act; and the judgment against the principal is conclusive
against the sureties.    But that is not this case, and that question
need not here be treated.    The bond here was not for the per-
formance of a specific act, but it was for general good and faith
ful conduct.    It is as to judgments against principals who have
given bonds of this nature—that is, official bonds of sheriffs and
constables—that the difference of opinions among the authori-
ties exists, and which difference we shall now note.

One line of authorities holds that the judgment against the
principal is conclusive against the sureties.    The courts hold-
ing this view are very few, although among them is one
wholly respectable tribunal.    The second view held is that the
judgment against the principal is *prima facie* evidence against
the sureties.    The third rule laid down by the authorities is
that the judgment against the principal is no evidence at all
against the sureties, and that, to hold the sureties for the mis-
feasance of the principal, the facts of the misfeasance must be
proved in an action in which the sureties are defendants.    These
two latter rules are sustained by probably a nearly equal num-
ber of respectable courts.

The question being a new one with us, and the authorities
being divided, we shall proceed to decide the matter upon what
appears to us to be the most reasonable principle.

The case of *Pico* v. *Webster*, 14 Cal. 203, is a leading case.
We find it cited by all text writers, and in many of the opin-
ions.    Its reasoning appeals to us so strongly that we quote
from it somewhat at length:    "This suit was brought on the
official bond of the defendant, Webster, who was sheriff of
San Joaquin county, against Webster and his sureties.    The

suit was brought to recover damages for the levy by Webster on property of plaintiff, which levy was made under color of process. Suit was brought against Webster for the trespass involved in this levy and seizure, and judgment recovered against him before the institution of this suit. The record of this recovery was offered as evidence by the plaintiff on the trial. The defendants offered to prove, on their part, that Webster was not guilty of the trespass complained of, and that the property seized was not the property of the plaintiff here. But the court refused to admit the testimony, upon the ground that the judgment against the sheriff was conclusive of all the facts passed upon and decided by the record. To this ruling the defendants excepted, and now present it for review here on appeal. There is no little conflict in the cases on this subject. There can be no doubt that, when a surety undertakes, for the principal, that the principal shall do a specific act, to be ascertained in a given way,—as, that he will pay a judgment,—that the judgment is conclusive against the surety; for the obligation is express that the principal will do this thing, and the judgment is conclusive of the fact and extent of the obligation. As the surety in such cases stipulates without regard to notice to him of the proceedings to obtain the judgment, his liability is, of course, independent of any such fact. (*Twain* v. *Gold*, 5 Pick 420; *Lincoln* v. *Blanchard*, 17 Vt. 474. See, also, *Riddle* v. *Baker*, 13 Cal. 295.) It is upon this ground that the liability of a bail is fixed absolutely by the judgment against the principal. But this rule rests upon the terms of the contract. In the case of official bonds, the sureties undertake, in general terms, that the principal will perform his official duties. They do not agree to be absolutely bound by any judgment obtained against him for official misconduct, nor to pay every such judgment. They are only held for a breach of their own obligations. It is a general principle that no party can be so held without an opportunity to be heard in defense. This right is not divested by the fact that another party has defended on the cause of action and been unsuccessful. As the sureties did not stipu-

late that they would abide by the judgment against the principal, or permit him to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights.   They have a right to contest with the  plaintiff the question of  their liability, for to hold that they are concluded from this contestation by the suit against the sheriff is to hold that they undertook, for him, that they would be responsible for any judgment against him which might be rendered by accident, negligence, or error, instead of merely stipulating that they would be responsible for his official conduct.   The authorities which sustain this view are numerous.   In *McKell* v. *Bowell*, 4 Hawks 34, a decree against the administrator of a guardian was held not to be evidence against the sureties of the guardian, to charge them with the amount  which  was recovered against the estate for unfaithful administration of the trust.   *Munford* v. *Overseers*, 2 Rand (Va.) 313, went a little further, holding that a judgment against the sheriff was no estoppel against him in an action on the bond against him and his sureties.   It seems to be held there that no recovery could be had against the principal, because he was not liable jointly with the sureties, and that the record of the judgment would be only *prima facie* evidence against the sureties.   *Beall* v. *Beck*, 3 Har. & McH. 242, is to the same effect.   *Douglass* v. *Howland*, 24 Wend. 35, is a leading case.   The authorities are reviewed by Mr. Justice Cowan with his usual learning.   That case was covenant, brought by the plaintiff against the surety on an obligation, by the principal, to account and pay over such sum as shall be found to  be owing by him, and the surety covenant that the party thus agreeing 'shall perform the agreement.'   A decree in chancery against the principal was offered.   The decree was on a bill filed  to  compel  an account. *Held*, that it was no evidence against the surety, unless he had notice of the suit. and an opportunity to defend in the name of the principal.   Many authorities are cited by the learned judge, who concludes that the surety's obligation was to pay over a balance due, not that he should abide by a judgment at law, or a decree in chancery, for not accounting.''

The doctrine of this case is reaffirmed in *Irwin* v. *Backus*, 25 Cal. 214, in which case, however, it was also held, as in 14 Cal. 203, that administrators' bonds are exceptions to the rule announced. See, further, in the opinion in *Pico* v. *Webster*, for a review of the cases. The rule was also originally held in Pennsylvania in *Carmack* v. *Com.*, 5 Bin. 184. A departure from the rule was made in that state in *Masser* v. *Strickland*, 17 Serg. & R. 354. This departure, however, was in the face of an able protest on the part of Chief Justice Gibson, as noted in *Pico* v. *Webster*, 14 Cal., at page 206. See dissenting opinion of Gibson, C. J., 17 Serg. & R. 358. See, also, generally, *Littleton* v. *Richardson*, 34 N. H. 179.

In this state, a principal and sureties may be sued together. (*Wibaux* v. *Live-Stock Co.*, 9 Mont. 154; *Hoskins* v. *White*, 13 Mont. 72; *Woodman* v. *Calkins*, 13 Mont. 365; *Nelson* v. *Donovan*, 16 Mont. 85.)

There is no reason, in the case at bar, why the principal and sureties were not originally sued in one action. It therefore seems to us that it is not within the spirit of the practice in this state to allow one to sue the principal first, and then make that judgment either conclusive or *prima facie* evidence against the sureties, who were not made parties to that action. It seems that to allow such practice would be an invasion of the principle that every man is entitled to his day in court. Another principle is that, when a defendant is sought to be charged with a liability, there is not a presumption of his liability to commence with. If we hold that a judgment against the principal is conclusive or *prima facie* evidence against the sureties, the sureties are obliged to start into the action with a presumption of liability against them. The ordinary rule of law is that the plaintiff must prove his case by evidence; but, if a judgment against the principal is evidence against the sureties, the affirmative of the case is thrown upon the defendants. They must take the burden of proof. Instead of the plaintiff proving his case, the defendants are placed in a position of being obliged to prove their nonliability. In analogy to a criminal case, the defendants would be obliged to prove their

own innocence. Defendants, in such a position, would be required to prove that their principal, the constable, had not been guilty of misconduct in his office. They would be obliged to prove that he had faithfully performed the duties of his office. It appears to us, however, that the proof should come from the other side; that the plaintiff should be required to prove, against the sureties, that the constable had not faithfully performed the duties of his office. This seems to us to be within the ordinary rules of practice and pleading. If the other rule is to be adopted, then the sureties would be obliged to go back, perhaps several years in time (three years, as it appears, in this case), and find the witnesses who were able to testify as to whether the constable had committed a trespass upon the goods of plaintiff. By that time the witnesses may be scattered or dead. The principal himself may be dead. The sureties would be obliged to collect a mass of evidence, the knowledge of which would be peculiarly within the possession of the plaintiff, and perhaps only by accident within the reach of the defending sureties. We cannot countenance such practice.

We believe by far the best of the three rules above noticed is that which denies to the judgment against the principal any effect as against the sureties. We think the sureties should not be compelled to face a judgment, with all its presumptions, and one which was rendered in an action to which the sureties were not parties, and of which they had no notice whatever, and to defend which they had no opportunity.

This action being upon the judgment, as plaintiff's counsel has insisted in his brief and argument, we are of opinion that the district court was correct in holding that the judgment could not bind these sureties. The court was therefore correct in sustaining the demurrers to the complaint.

The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.

HUNT, J., absent.